UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
------------------------------------------------×
KENDREA BULLITT,

      *Plaintiff,*

      *v.*

HEARST COMMUNICATIONS, INC.,

      *Defendants.*
------------------------------------------------×

**COMPLAINT**

**3:23-cv-909**

**JURY REQUESTED**

Plaintiff Kendrea Buillitt, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendant Hearst Communications, Inc. ("Defendant" or "Hearst") as follows:

## PRELIMINARY STATEMENT

1. This case is about Plaintiff being treated differently because she is a Black woman and being terminated, out of retaliation, when she complained about race discrimination.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. §1331 this Court can properly hear Plaintiff's claims as they arise under a federal statute.

3. Pursuant to 28 U.S.C. §1367 this Court can properly hear Plaintiff's State law claims as they arise out of the same nucleus of operative fact so as to create the same case or controversy.

4. This case is properly before the Northern District of Texas as Plaintiff was a remote worker who lived in Dallas. Defendant is a mega conglomerate and Plaintiff's employment reflected that as she serviced markets in Houston, Illinois, Michigan, and Human Resources employees named in the complaint reside in San Francisco, but she was always employed as a remote employee working in Dallas.

1

## PARTIES

5. Plaintiff was and is a resident of Texas.

6. Defendant Hearst is incorporated in New York and has a principal place of business at 300 W 57th St, New York, New York 10019.

## JURY DEMAND

7. Plaintiff respectfully requests a trial by jury.

## STATEMENT OF FACTS

8. Plaintiff began her employment on March 21, 2022.

9. Plaintiff was hired to the Hearst Houston group and trained to support that market and operated there for three months.

10. Plaintiff's manager was Stefanie Lopez, who gave Plaintiff weekly metrics that she expected her to reach, however, no one else on the team had the same expectations or requirements.

11. Plaintiff was never told that she failed to meet the metrics set out for her.

12. Plaintiff was abruptly reassigned to the Hearst Midwest group in July 2022 without any warning or notice.

13. A few days prior to her transfer, however, Plaintiff was asked by her manager, Ms. Lopez, to give feedback about Ms. Lopez's managing style.

14. Plaintiff informed that she felt Ms. Lopez had a tendency to micromanage her and others. A few days later, Plaintiff was reassigned.

15. After she was notified of her reassignment, she asked Ms. Lopez why, and Ms. Lopez only responded that reassignments happen and Plaintiff should "put her big girl panties on."

16. Plaintiff escalated to Human Resources that she felt the comment was inappropriate and that the reassignment was unfair and baseless.

17. Renee Peterson, a Human Resources employee, told Plaintiff that it was a business

decision, made no mention of performance, and stated nothing would be done.

18. On December 13, 2022, Plaintiff joined a meeting with Ms. Lopez and another Human Resource employee, Sean Kurysh.

19. Plaintiff was offered either a performance improvement plan ("PIP") or a six weeks' pay severance offer.

20. Plaintiff was shocked as she had no knowledge of any poor performance, and she was never told that she was not performing well.

21. When Plaintiff asked why she was given a PIP, despite having a satisfactory work record, she was not given an answer.

22. Again, Plaintiff's PIP included metrics she was expected to meet, along with a list of expectations around meeting participation, and utilization of certain recruiting tools while no one else on her team was being held to those standards.

23. The culmination of these interactions led Plaintiff to believe that she was being treated differently because of her race, as she was the only Black woman in the recruiting department.

24. Plaintiff expressed these concerns to Mr. Kurysh shortly after being placed on her PIP.

25. Mr. Kurysh asked Plaintiff "what do you want to get out of this experience" and Plaintiff responded that she only wanted to be treated fairly and equally.

26. Plaintiff asked Mr. Kurysh to investigate her complaints of being treated differently because of her race, but he never did. Plaintiff specifically asked that he interview witnesses and team members, but Mr. Kurysh never spoke to them despite saying he would investigate.

27. Instead, he only tracked Plaintiff's PIP progress through weekly updates from Ms. Lopez.

28. Plaintiff successfully completed her PIP in mid-January 2023.

29. On or about February 8, 2023, Plaintiff then asked Mr. Kurysh what she can do to avoid another PIP in the future and, as well, again asked him to investigate her complaints of race discrimination.

30. Again, Mr. Kurysh failed to conduct any proper investigation.

31. On February 13, 2023, Plaintiff was called to a meeting with Ms. Lopez and Ms. Peterson and was abruptly terminated. In fact, the two turned off Plaintiff's work email during the meeting.

32. Plaintiff was the second Black employee terminated in less than twelve months.

33. Plaintiff was terminated solely for raising her rights to be free from discrimination.

34. Plaintiff felt that the discrimination Plaintiff faced was severe and a serious assault on her employment, and she expressed these concerns to Hearst Human Resources department.

35. Not only were her complaints not heard, she was terminated less than a week after again complaining about race discrimination.

## CAUSES OF ACTION
## FIRST CLAIM

**Disparate Treatment under 42 U.S.C. §1981 and the Texas Labor Code**

36. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 35 with the same force as though separately alleged herein.

37. Under 42 U.S.C. §1981, it is illegal for an employer to allow a work environment hostile to employee's race.

38. Chapter 21 of the Texas Labor Code encompasses and reasserts the protections afforded by 42 U.S.C. §1981.

39. Plaintiff was an employee of Defendant and is a member of a protected category as a Black woman.

40. Defendant's employees permitted a work environment hostile to Plaintiff's race.

41. Defendant's employees placed Plaintiff on a PIP despite no documented work performance issues and abruptly reassigned her to another group when she raised complaints about her manager's style.

42. Plaintiff was reassigned to a division with historically low production and, once reassigned, Plaintiff was placed on a PIP in an effort to force her out.

43. Plaintiff was the only Black employee at the time.

44. Plaintiff was the only employee reassigned or put on a PIP.

45. But-for being Black, Plaintiff would not have be subjected to unfair oversight and an illegal PIP designed to harass Plaintiff and set Plaintiff up for failure.

46. Plaintiff seeks front pay, back pay, costs, expenses, emotional distress damages, interest, attorneys fees, and any and all other remedies and/or relief available to her.

## SECOND CLAIM

### Retaliation under 42 U.S.C. §1981 and the Texas Labor Code

47. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 35 with the same force as though separately alleged herein.

48. Under 42 U.S.C. §1981, it is illegal for an employer to retaliate against someone when they raise complaints related to Black employees being treated differently in the work place.

49. Chapter 21 of the Texas Labor Code encompasses and reasserts the protections afforded by 42 U.S.C. §1981.

50. Plaintiff was an employee of Defendant and is a member of a protected category as a Black woman.

51. Plaintiff asked Defendant's Human Resources department to conduct an investigation into race discrimination, twice.

52. Plaintiff successfully completed a bogus PIP and again raised her right to be free from discrimination.

53. Plaintiff was fired less than a week after her second complaint and her successful completion of the PIP.

54. Plaintiff seeks front pay, back pay, costs, expenses, emotional distress damages, interest, attorneys fees, and any and all other remedies and/or relief available to her.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. for the second cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements; and

C. For such other and further relief as the Court deems just and proper.

Dated: New York, NY
April 28, 2023

**THE HARMAN FIRM, LLP**

By: /s/ Walker G. Harman, Jr.

Walker G. Harman, Jr.
1270 Sixth Ave.
Suite 756
New York, NY 10020
(646) 248-2288
wharman@theharmanfirm.com
*Attorney for Plaintiff*